

The following constitutes
the order of the court. Signed March 20, 2015

Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

MAC-GO CORPORATION,

Debtor.

Case No. 14-44181 CN

Chapter 7

**MEMORANDUM DECISION RE: FEE CLAUSES**

After numerous motions to dismiss, one summary judgment motion, and a day long trial, First National Bank (the "Bank") now moves to recover some of the attorney's fees and costs that it incurred in this adversary proceeding. While the Bank's attorney's fees are substantial, it has (for the moment) limited its request to $62,480.41. The Bank contends that the attorney's fee clauses in the Mac-Go loan documents entitle it to recover the fees and costs that it incurred in defending the Chapter 7 Trustee's Bankruptcy Code §§ 547, 548 and 549 claims for relief arising from the Mac-Go loans.[1] The Trustee disagrees.

Procedurally, the Bank's request raises further questions. After trial (and well after the claims bar date), the Bank filed a $346,745.24 proof of claim, which included a secured claim for the $62,480.41 in fees and costs at issue herein. The Bank alternatively argues that (1) regardless of

---

[1] The Trustee's claims against the Bank are described at length in the memorandum decision granting the Bank's summary judgment motion and the memorandum after trial. The court presumes that the parties are well versed in these facts, that they recognize that the loan in question was made directly by the Bank to Mac-Go, and that this memorandum does not refer to the personal Macchia loans which Mac-Go guaranteed. Accordingly, this memorandum will only address those facts necessary to make this decision coherent.

1

Memorandum Decision

its proof of claim, it is entitled to recover its attorney's fees under *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (U.S. 2007) and its progeny, and (2) that it is over-secured and thus entitled to reasonable fees and costs under the Mac-Go loan documents pursuant to Bankruptcy Code § 506(b). The Trustee objected to the Bank's proof of claim and filed an opposition to the Bank's motion. The Trustee first contends that the fee clauses are limited in scope and that the Bank's fees and costs are not covered by them under any circumstances. The Trustee alternatively argues that even if the fees and costs do fall within the fee clauses, the Bank is undersecured and that its request for fees and costs constitutes a time-barred unsecured claim. While the Trustee's objection raises serious questions, most of his arguments will be resolved on another day. This decision only addresses whether the Bank's requested fees (analyzed under § 506(b) or the *Travelers* doctrine) fall within the fee clauses in the Mac-Go loan documents.

In December 2009, Mac-Go borrowed $250,000.00 from the Bank and secured the loan by providing the Bank with a perfected security interest encumbering all of its assets, including its inventory, chattel paper, accounts and equipment (the "Mac-Go Loan"). Mac-Go and the Bank signed three documents as part of the Mac-Go Loan: the Business Loan Agreement (the "Loan Agreement"), the Promissory Note (the "Note") and the Commercial Security Agreement (the "Security Agreement"). Each contains an attorney's fee clause.

a.) <u>Note</u>: Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's Attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

b.) <u>Loan Agreement</u>: Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses,

2

incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's Attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and additional fees as may be directed by the court.

      c)     <u>Commercial Security Agreement</u>: Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's Attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor shall also pay all court costs and additional fees as may be directed by the court.[2]

While the Fee Clauses are similar, they are not identical. Moreover, neither the Bank nor the Trustee convincingly argued which clause governs. The court believes that it should utilize all three clauses. First, the Note states that "in addition to the terms and conditions contained in the Note, it is also subject to the terms and conditions contained in that certain Business Loan Agreement." Since the Trustee sought to avoid payments made under the Note, the court should at the very least rely on these two clauses. Second, the Trustee conceded summary judgment on his preference claims

---

[2] These fee clauses will collectively be referred to as the "Fee Clauses."

because the Bank was over-secured (at least when these pre-petition payments were made). This court therefore should also examine the clause in the Security Agreement.

This court looks to California law to determine the scope of the Fee Clauses. Bankruptcy Code § 506(b) allows over-secured creditors to recover "reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." California is the governing law in the Note, Loan Agreement, and Security Agreement. *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (U.S. 2007), which upended long-standing Ninth Circuit law precluding the award of post-petition attorney's fees in bankruptcy litigation, also requires that this court apply California law. In *Travelers*, the Supreme Court affirmed the general presumption that "claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." The Court concluded that "[t]he character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy." *Id*. at 454 (citations omitted). *See also, In re SNTL Corp.*, 380 B.R. 204, 221 (9th Cir. B.A.P. 2007) *aff'd*, 571 F.3d 826 (9th Cir. 2009) ( "[W]e hold that attorney's fees arising out of a prepetition contract but incurred postpetition fall within the Bankruptcy Code's broad definition of claim . . .").

The Bank contends that Cal. Civ. Code §1717 and Cal. Code of Civ. Procedure §1021 allow it to recover fees under the Fee Clauses. Section 1717 states, in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract . . . then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . .

Section 1717 only applies in contract actions. *Santisas v. Goodin*, 17 Cal. 4th 599, 615 (1998). As a result § 1717 may not be applicable herein, as it is unclear whether §§547, 548, and 549 claims for relief are "action[s] on a contract . . . [to] enforce that contract." The court need not, however resolve this issue, since the Bank is the explicit beneficiary of the Fee Clauses and need not rely on §1717. *See MRW, Inc. v. Big-O Tires, LLC*, 684 F. Supp. 2d 1197, 1202-1203 (E.D. Cal. 2010) (when a unilateral fee-shifting provision is drafted in favor of the party relying on such

4

Memorandum Decision
Case: 14-44181    Doc# 235    Filed: 03/20/15    Entered: 03/20/15 15:15:14    Page 4 of 12

provision, the party seeking fees need not rely on section 1717(a)'s "enforced bilateralism").

Instead, the Bank may rely on Cal. Code of Civ. Procedure §1021, which allows a party to recover attorney's fees in actions other than breach of contract complaints. Section 1021 provides in relevant part that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Thus, under §1021, parties may contract for the recovery of attorney's fees regardless of whether such litigation is premised on contract claims, tort claims, statutory claims, or otherwise, so long as the fee clause is sufficiently broad to encompass such claims. "[P]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." *Xuereb* 3, Cal. App. 4th at 1341; *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 706 (1998). Examples of such broadly worded language include clauses that allowed fees: "arising out of the execution of the agreement" (*Santisas*, 17 Cal. 4th at 607); "relating to the contract" (*Moallem v. Coldwell Banker Com. Group, Inc.* 25 Cal.App.4th 1827, 1831 (1994)); "to which this Agreement gives rise" (*Xuereb,* 3 Cal.App.4th at 1342); incurred in "any dispute under the agreement" (*Thompson v. Miller*, 112 Cal.App.4th 327, 333 (2003)); incurred in "any dispute" (*Maynard v. BTI Group, Inc.*, 216 Cal. App. 4th 984, 993 (2013); incurred pursuant to a "civil action instituted in connection with this Agreement" (*Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1277 (2007)).

This court cannot look past the express terms of the Fee Clauses (Cal. Civ. Code §1639) if their language is "clear and explicit, and does not involve an absurdity" Cal. Civ. Code §1638. The Fee Clauses will be construed "in their ordinary and popular sense, rather than according to their strict legal meaning" unless the parties use language in a "technical sense" or usage indicates the language is to be given "special meaning." *See Santisas* 17 Cal. 4th at 608 ("[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.").

The Bank incurred its fees defending against §§ 547, 548 and 549 claims for relief. Since the elements of these claims differ, the court must separately analyze whether the Bank may recover the fees incurred in defending them.

5

Memorandum Decision
Case: 14-44181    Doc# 235    Filed: 03/20/15    Entered: 03/20/15 15:15:14    Page 5 of 12

**The Fraudulent Conveyance Claims**

The Bank contends that the fee clause in the Loan Agreement unambiguously authorizes it to recover its fees, since it encompasses all fees for "bankruptcy proceedings." The Bank gives this clause too broad a swath, and ignores the preceding sentences that fundamentally limit its scope. While the fee clause does allow for fees incurred in bankruptcy proceedings, such proceedings must have been "incurred in connection with the enforcement of this [Loan] Agreement." The question thus becomes whether defending against the Trustee's fraudulent conveyance claims required the Bank to "enforce" the Loan Agreement.

In his third amended complaint, the Trustee alleged that twenty-two transfers made by Mac-Go between February 8, 2010 and January 6, 2012 were fraudulent transfers under Bankruptcy Code § 548(a)(1)(B). This code section provides in pertinent part:

> "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

The Bank obtained summary judgment on these claims because it demonstrated, not surprisingly, that Mac-Go received "reasonably equivalent" value in exchange for these transfers. *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009). Section 548(d)(2)(A) defines "value" as the "satisfaction or securing of a present or antecedent debt of the debtor." The twenty-two transfers were, in fact, Mac-Go payments on the Mac-Go Loan. "To the extent a transfer constitutes repayment of the debtor's antecedent or present debt, the transfer is not constructively fraudulent." *Official Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.)*, 714 F.3d 1141, 1145-1146 (9th Cir. 2013).

The Trustee's fraudulent conveyance claims did not directly question the validity of the Loan

6

Agreement or Note. In fact, the Trustee appeared to be ignorant of the existence of the Mac-Go Loan and believed that the transfers had been made entirely for the Macchias' benefit. The Bank's defense against these claims, however, was premised on the validity of the Loan Agreement and Note. It successfully argued that the Note and Loan Agreement were valid, enforceable agreements that required Mac-Go to make the twenty-two payments in question.[3] Utilizing the Note and Loan Agreement in order to retain these payments is the functional equivalent of relying on these documents to pursue a collection action. Both should qualify as the "enforcement" of the Loan Agreement and Note.

There is California case law, however, that holds to the contrary. For example, in *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698 (1998), the court of appeal examined whether a real estate broker sued on several tort claims could rely on an attorney's fee clause in a lease to recover its fees. In *Exxess*, the plaintiff asserted tort claims against a real estate broker which had negotiated its lease. The parties settled the case, and the broker sought to recover its attorney's fees under a lease provision that read that "[i]f any Party or Broker brings an action or proceeding to enforce the terms hereof or declare rights hereunder, the Prevailing Party . . . or Broker. . . shall be entitled to reasonable attorney's fees." The broker argued that because its defense required that it assert an "as is" clause in the lease, it effectively enforced the lease. While the court of appeal agreed that asserting the defense may have had the effect of "enforcing the terms of the lease," it refused to award fees because the real estate broker had not asserted any affirmative claims and thus had not 'brought" an action or proceeding. *Exxess Electronixx*, 64 Cal. App. 4th at 712.

*In Gil v. Mansano*, 121 Cal. App. 4th 739 (2004), the court also narrowly interpreted an attorney's fees clause in a release and rejected the defendant's fee motion. Here, two real estate investors were parties to a purchase agreement and a related release. When one investor asserted a fraud claim against the other, the defendant successfully relied on the release language, and thereafter filed a motion to recover his attorney's fees. The release's fee clause provided that "[i]n

---

[3]That's why the Trustee conceded summary judgment on his fraudulent conveyance claims.

7

**Memorandum Decision**

the event action is brought to enforce the terms of this [Release], the prevailing party shall be paid his reasonable attorney fees and costs incurred therein." The court of appeal reversed the trial court's award of attorney's fees. It determined that where "a defense to a tort action based on a provision of the contract may have the effect of enforcing the provisions of the contract . . [t]he assertion of a defense does not constitute the bringing of an action to accomplish that goal." *Gil*, 121 Cal. App. 4th at 744. Simply, the court held that the phrase "brings an action to enforce the contract" was "quite narrow." *Id.*

While the *Exxess* and *Gil* decisions are distinguishable by reason that the Loan Agreement is not limited to parties who "bring" an action, these cases also clash with California Supreme Court caselaw (and intermediate appellate decisions) which reject the proposition that California courts should narrowly interpret fee clauses. The California Supreme Court has held that fee provisions are subject to "the *ordinary* rules of contract interpretation." *Santisas,* 17 Cal. 4th at 608 (emphasis added). *See also Mountain Air Enterprises, LLC v. Sundowner Towers, LLC*, 231 Cal. App. 4th 805, 818, n.7 (2014). In addition, other California courts have expressly rejected *Exxess* and *Gil* and hold that a defendant may recover attorney's fees under the terms of a contract which formed its defense. For example, in *Windsor Pacific LLC v. Samwood Co., Inc.*, 213 Cal. App. 4th 263 (2013), Windsor contended that it held prescriptive easement rights which allowed it to use certain roads on Shadow's property. It then sued Shadow to enforce these rights. Shadow prevailed in the litigation, and it sought attorney's fees under a fee clause in the easement document that authorized the prevailing party to recover fees "[i]n any action or proceeding to enforce or interpret the provisions of this agreement." The trial court denied the request for attorney's fees but the court of appeal reversed. It reasoned that an "an action in which a party seeks to enforce or interpret a contract in connection with . . . a defense alleged in an answer will constitute an action to 'enforce or interpret' the contract." *Id.* at 275.[4]

In *Finalco, Inc. v. Roosevelt*, 235 Cal. App. 3d 1301 (1991), the court similarly determined

---

[4] The *Windsor* court expressly acknowledged its conflict with the *Exxess* and *Gil* decisions. *Id*. at 275.

8

**Memorandum Decision**

that using a contract provision as a defense to tort litigation is akin to enforcing the contract's terms. There, a lender sued a borrower to collect on its promissory note. The borrower cross-claimed, asserting fraud and misrepresentation claims, along with numerous violations of federal and state securities laws. The trial court dismissed the borrower's claims and awarded the lender its attorney's fees in defending against the cross-claims based on a fee clause that required the borrower "to pay all costs of collection . . . including, without limitation, all attorney's fees and expenses and court costs." The court of appeal upheld the fee award and held that the lender's defense was "inextricably intertwined" with its collection efforts and that it had to defend against borrower's fraud claims in order to collect on the note. *Id*. at 1308. "[A] borrower's obligation to pay attorneys' fees incurred in the collection of [a] note includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation." *Id.  See also Siligo v. Castellucci*, 21 Cal. App. 4th 873 (1994); *MRW, Inc. v. Big-O Tires, LLC*, 684 F. Supp. 2d 1197 (E.D. Cal. 2010); *Wagner v. Benson*, 101 Cal. App. 3d 27, 37 (1980); and *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC*, 231 Cal. App. 4th 805 2014).

This court agrees with *Windsor Pacific* and also believes that it must follow California Supreme Court caselaw and apply "ordinary" rules of interpretation when analyzing a fee clause.[5] The Loan Agreement's fee clause is not limited to the party who "brings" an action. As such, it must also apply to the party who successfully defends an action by raising the enforceable terms of the litigants' binding contract. This is an ordinary and common sense interpretation of the Loan Agreement's fee clause. Accordingly, the Bank is entitled to recover the (reasonable) fees and costs that it incurred defending against the fraudulent conveyance claims for relief.

**The Preference Claims**

The Bank is also entitled to recover the fees in incurred in defending against the Trustee's preference claims for relief. Bankruptcy Code § 547(b) authorizes the Trustee to avoid transfers of

---

[5] When interpreting California law, this court is bound by California Supreme Court precedent. *Sec. Pacific Nat'l Bank v. Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). In the absence of a controlling decision from the California Supreme Court, "a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and statements as guidance." Id. at 1239.

"an interest of the debtor in property (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made - (A) on or within 90 days before the date of the filing of the petition; . . . and (5) that enables such creditor to receive more than such creditor would receive if - (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The Bank successfully argued that it was fully secured when it received the payments in question, and that the Trustee therefore could not establish that the Bank received more than it would have in a hypothetical Chapter 7 case. *See, e.g.*, *Batlan v. Transamerica Commer. Fin. Corp. (In re Smith's Home Furnishings, Inc.)*, 265 F.3d 959, 971 (9th Cir. 2001). This argument required the Bank to establish that it had (at the relevant times) a perfected security interest in Mac-Go collateral, the value of which was equal to or exceeded the amount due under the Mac-Go Loan. The Trustee conceded these points when he dismissed his preference claims. The question here is whether the Bank's efforts constituted the "enforcement" of the Security Agreement.

Enforcement of a security agreement extends beyond the simple foreclosure of collateral. Secured creditors frequently use security agreements to establish their priority to receive payments when a third party (such as a receiver or trustee) liquidates its collateral. This issue is regularly litigated in bankruptcy cases, as the Bankruptcy Code has established a firm framework regarding how Chapter 11 debtors and Chapter 7 trustees recover and distribute property of the bankruptcy estate. With rare exception, a Chapter 7 trustee cannot disburse to unsecured creditors the proceeds of collateral subject to a perfected security agreement without first fully satisfying the secured creditor. Similarly, a Chapter 7 trustee cannot avoid and recover payments made to a fully secured creditor on a preference theory. The secured creditor, by dint of its secured claim, has a right to retain the allegedly preferential payments. This argument is premised, however, on the secured creditor establishing the bonafides of its secured claim. This is exactly what the Bank did to prevail on the preference claims. *Windsor Pacific, FinalCo, Siligo,* and *MRW* are equally applicable in the preference context, and the Bank therefore can recover the (reasonable) fees and costs that it

10

**Memorandum Decision**

incurred in defending against the preference claims.[6]

**The Post-Petition Claims**

Similarly, the Bank can also recover the fees that it incurred in successfully litigating the Trustee's § 549 claims. A trustee may avoid a transfer under Bankruptcy Code § 549(a) " (1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by this court." A Trustee may not, however, recover post-petition payments made to a fully secured creditor. *See Weiss v. People Sav. Bank (In re Three Partners)*, 199 B.R. 230, 237 (Bankr. D. Mass. 1995). The purpose of § 549 "is to ensure that similarly situated pre-petition creditors are treated even-handedly." *Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)*, 45 B.R. 555, 557 (Bankr. D. Vt. 1984). If a creditor is fully secured, postpetition payments on such debt does not effect other creditors and the estate derives no benefit from avoiding such payments. *Dave Noake, Inc.*, 45 B.R. at 557.

Thus, for all the same reasons, the Bank can recover the fees that it incurred in defending against the Trustee's § 549 claims for relief. The Bank's defense was premised on the Loan Agreement and Security Agreement, which constituted the enforcement of these documents.

* * * END OF ORDER * * *

---

[6] This court's research unearthed *Williams v. Official Unsecured Creditors' Comm. (In re Connolly)*, 238 B.R. 475 (9th Cir. B.A.P. 1999), where the BAP held that a secured creditor could not recover the fees that he incurred in prevailing against the plaintiff's preference claim for relief. There, the successful creditor sought fees under the fee clause in its security agreement which authorized fees to "the prevailing party only in connection with the enforcement or interpretation of the security agreement." Unlike this case, the plaintiff Creditors' Committee sought to avoid the security agreement itself as a preferential transfer. As a result, the BAP held that the litigation addressed the "ownership of the security interest in the promissory note, not the enforcement or the interpretation of the security agreement itself."*Id.* at 479. *Connolly* therefore is distinguishable, as the secured creditor was forced to defend the creation of the security agreement itself.

Case No. 14-44181 CN

COURT SERVICE LIST

Recipients are ECF participants