

The following constitutes
the order of the court. Signed November 19, 2015

_____
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>MAC-GO CORPORATION,<br><br>Debtor. | Case No. 14-44181 CN<br>Chapter 7<br><br>**MEMORANDUM ORDER RE:<br>CHAPTER 7 TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY FIRST NATIONAL BANK OF CALIFORNIA** |

    First National Bank of Northern California ("FNB") seeks the allowance of its proof of claim that it filed on November 26, 2014 in this bankruptcy case. The bulk of the claim consists of attorney's fees and costs that FNB incurred in litigation with the Chapter 7 Trustee. On March 20, 2015, this court entered an order finding that the attorney's fees and costs that FNB incurred in defending against the Chapter 7 Trustee's avoidance claims arising from payments made on the Mac-Go Loan (as defined below) fell within the ambit of the attorney's fees clauses in the parties' applicable commercial loan documents. The March 20th order was of limited scope, however, and it did not determine whether (a) these attorney's fees and costs constituted an allowed secured or unsecured claim under the Bankruptcy Code; (b) FNB was entitled to attorney's fees and costs arising from its defense of the claims stemming from the separate Woodland and SSF Loans (as defined below); and (c) FNB timely filed its proof of claim in this Chapter 7 case. Moreover, the March 20th order did not determine who was the prevailing party in the adversary proceeding.

1

In numerous pleadings filed after the March 20th order, FNB contends that all the attorney's fees and costs that it incurred in the adversary proceeding are allowable as a timely filed claim in this Chapter 7 case. To put it simply, the Chapter 7 Trustee disagrees.

For the reasons stated below, the court sustains the Chapter 7 Trustee's objections to FNB's attorney's fees and costs, and limits FNB's proof of claim to the $25,300.24 judgment it paid under Bankruptcy Code § 502(h).

## Background

Debtor Mac-Go Corporation ("Mac-Go") operated a wholesale auto parts and oil business at several Bay Area locations. At all relevant times, Mac-Go was wholly owned by Michael and Elizabeth Macchia. In February 2006, the Macchias borrowed two million dollars from FNB and pledged certain South San Francisco real property as security (the "SSF Loan"). Mac-Go guaranteed the SSF Loan by executing a form continuing guaranty, dated February 13, 2006 (the "Guaranty"). In September 2006, the Macchias borrowed an additional one million dollars from FNB. This loan was secured by the Macchias' real property in Woodland, California (the "Woodland Loan"), and was also subject to the Guaranty.

In December 2009, Mac-Go borrowed $250,000.00 from FNB (the "Mac-Go Loan"). Mac-Go secured this loan by providing FNB with a perfected security interest encumbering all of its assets, including its inventory, chattel paper, accounts and equipment (the "Collateral"). Mac-Go and FNB signed three documents in connection with this loan: a Business Loan Agreement, Promissory Note, and Commercial Security Agreement. FNB perfected its security interest in the Collateral by, among other things, filing a UCC Financing Statement on January 14, 2010 (the "Financing Statement").

## The Adversary Complaint

Certain of Mac-Go's creditors filed an involuntary petition against Mac-Go on January 6, 2012. This court entered the order for relief on February 12, 2012, and Mohammed Poonja was appointed as the Chapter 7 Trustee (the "Trustee") on February 14, 2012.

The Trustee filed an adversary complaint against FNB on July 10, 2012 (the "Adversary Proceeding") seeking to avoid numerous pre and post-petition payments that Mac-Go made to FNB

on the SSF, Woodland and Mac-Go Loans under §§ 547, 548, and 549 of the Bankruptcy Code.[1]
FNB filed three separate motions to dismiss the Adversary Proceeding before filing an answer on
March 15, 2013. FNB thereafter filed a motion for summary judgment on March 21, 2014 and this
court granted partial summary judgment in its favor, dismissing all of the Trustee's avoidance claims
regarding the Mac-Go Loan. *See Order re Summary Judgment* [D.E. #80]. The dismissed claims
sought to avoid approximately $814,214 in payments on the Mac-Go Loan.

The parties then proceeded to trial on the Trustee's claims to avoid the following pre and
post-petition payments on the SSF and Woodland Loans under Bankruptcy Code §§ 548(a)(1)(B)
and 549:

- an October 17, 2011 SSF Loan payment for $13,598.12;
- a February 1, 2012 SSF Loan payment for $13,598.12;
- an October 24, 2011 Woodland Loan payment for $7,932.87;
- a November 23, 2011 Woodland Loan payment for $5,851.06;
- a December 22, 2011 Woodland Loan payment for $5,851.56;
- a January 13, 2012 Woodland Loan payment for $5,851.06; and
- a February 1, 2012 Woodland Loan payment for $5,851.06.

On November 5, 2014, this court issued a memorandum trial decision which found that Mac-Go made all of the above payments pursuant to its contractual obligations under the Guaranty, and that it had received reasonably equivalent value in exchange for its payments. As a result, the court dismissed the § 548(a)(1)(B) claims for relief. The court ruled in the Trustee's favor, however, on his § 549 claims for relief, and on November 11, 2014, this court entered a $25,300.24 judgment in the Trustee's favor. The judgment also granted the Trustee's request for declaratory relief, holding that the SSF Loan was fully satisfied on March 9, 2012 and the Woodland Loan was fully satisfied on January 27, 2012.

---

[1] The Trustee filed amended complaints on July 13, 2012, September 14, 2012, and December 6, 2012. Unless otherwise noted, this memorandum refers to the claims for relief asserted in the December 2012 amended complaint.

FNB's Proof of Claim

On November 26, 2014 (fourteen days after entry of the above judgment), FNB filed a $346,745.24 proof of claim in this case (the "Claim"). The Claim includes (a) $293,811.00 in fees and costs incurred by FNB in defending against **all** of the claims asserted by the Trustee in the Adversary Proceeding, (b) $27,634.08 in fees incurred by FNB in Michael Macchia's individual bankruptcy, and (c) $25,300.24 arising from its payment of the judgment under Bankruptcy Code § 502(h). On the same date, FNB filed a motion (the "Allowance Motion") for allowance and immediate payment of the $62,480.41 in fees and costs that it incurred in obtaining partial summary judgment on the Trustee's claims to avoid payments made on the Mac-Go Loan (the "Mac-Go Loan Fees").[2] In the Allowance Motion, FNB alleged that the Mac-Go Loan Fees were secured by the Collateral and that it was entitled to these fees under its commercial loan documents. The Trustee opposed the Allowance Motion by, among other things, filing an objection to the Claim. On March 20, 2015, this court entered a memorandum order on the Allowance Motion (the "Mac-Go Fee Clause Order"). In the Mac-Go Fee Clause Order, this court determined that the attorney's fees clauses in the Mac-Go Loan documents were sufficiently broad to allow FNB to seek reimbursement of the Mac-Go Loan Fees. The Mac-Go Fee Clause Order was, in retrospect, quite limited, and it did not determine whether the Mac-Go Loan Fees were secured or otherwise allowable under Bankruptcy Code § 502. The Mac-Go Fee Clause Order also did not address FNB's right to seek reimbursement of the fees and costs that it incurred litigating the claims arising from the Woodland and SSF Loans.

Following entry of the Mac-Go Fee Clause Order, FNB filed two supplements to the Allowance Motion wherein FNB sought, *inter alia*, reimbursement of its remaining fees and costs incurred in the Adversary Proceeding; i.e., those fees and costs incurred in defending against the §§ 548 and 549 claims arising from payments made by Mac-Go on the Woodland and SSF Loans (the "Supplemental Allowance Motions"). Collectively, the Allowance and Supplemental Allowance Motions contend that the Mac-Go Loan Fees were secured under Bankruptcy Code § 506

---

[2] These fees are part of the $293,811.00 in fees and costs included in the Claim.

4

(and thus to be paid from its Collateral), and that all of its remaining fees and costs incurred in the Adversary Proceeding (and those that it incurred in Michael Macchia's individual bankruptcy) were an allowable, general unsecured claim. These requests moved FNB's fee claim from the somewhat abstract and limited realm of the Mac-Go Fee Clause Order to a real world determination regarding whether any of its attorneys fees are allowable under Bankruptcy Code §§ 502 and 506.

Other Relevant Post-Petition Activity

Before the Trustee filed the Adversary Proceeding, Mac-Go, the Trustee, and FNB engaged in certain post-petition conduct that relate to whether this court should allow the Claim. Such conduct is described below.

### Payment of the Mac-Go Loan and the Financing Amendment.

On January 27, 2012 (after the petition date but before entry of the order for relief) Mac-Go delivered two checks to FNB for $80,312.54 and $1,051.46, which paid off the Mac-Go Loan. On January 31, 2012 FNB filed a UCC Financing Statement Amendment with the California Secretary of State (the "Financing Amendment"), which terminated the Financing Statement related to the Mac-Go Loan. FNB does not argue that it erroneously terminated the Financing Statement.

### The Trustee's Turnover Request

On February 23, 2012, the Trustee requested that FNB turn over any Mac-Go account that it held. FNB complied with the Trustee's request on or about March 7, 2012, and ceded control of a Mac-Go bank account containing $60,673.44.[3]

### The Trustee's Liquidation of the Debtor's Personal Property.

On April 5, 2012, the Trustee and FNB entered into a stipulation that authorized the Trustee to sell certain of the Collateral. The stipulation contained language stating that "First National Bank of Northern California has not released its UCC financing statements." On or around April 19, 2012 the Trustee auctioned several vehicles owned by Mac-Go for $11,104.00 as well as other miscellaneous personal property, generating an additional $9,300 in sales proceeds. The Trustee has also recovered $20,000 of Mac-Go's outstanding accounts receivable. FNB asserts that this personal

---

[3]This turnover demand was not heard by this court.

property is part of its Collateral.

## Discussion

FNB contends that it is entitled to assert a claim for attorney's fees and costs in its dual capacity as a secured creditor under Bankruptcy Code § 506 and as an unsecured creditor under Bankruptcy Code § 502. These are not inconsistent positions. Bankruptcy Code § 506 authorizes over-secured creditors to seek attorneys fees and costs separate and apart from any rights they may have as a prevailing party. *See In re McGraw Property Management, Inc.*, 133 B.R. 227 (Bankr. C.D.Cal. 1991). The question remains, however, regarding whether FNB is a secured creditor.

I. Are the Mac Go-Loan Fees Secured Under Bankruptcy Code § 506

FNB argues that the Mac-Go Loan Fees are fully secured and awardable under Bankruptcy Code § 506 because, as of the petition date, the value of the Collateral exceeded these attorneys fees and costs (which were $62,480.41).[4]

Questions addressing the secured nature of a claim typically begin with Bankruptcy Code §506(a). Under §506(a)(1) "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property."

To state the obvious, § 506 does not apply if there is no lien against property of the estate. For the reasons stated below, FNB no longer has a lien against property of this bankruptcy estate, and the Mac-Go Fees are therefore unsecured.

A. Effect of the Satisfaction of the Mac-Go Loan and the Termination Statement.

California Commercial Code § 9513(d) provides in pertinent part that "upon the filing of a termination statement with the filing office, the financing statement to which the termination

---

[4] To remind all readers, this court held in its Mac-Go Fee Clause Order that the fee provisions in FNB's commercial loan documents were sufficiently broad to include the fees that FNB incurred in defending the claims arising from the payments made on the Mac-Go Loan. The Mac-Go Fee Clause Order did not, however, address whether FNB's fees were actually secured (or otherwise allowable under the Bankruptcy Code).

6

statement relates ceases to be effective." A termination clause in an amended financing statement is effective so long as it is "not seriously misleading." *Koehring Co. v. Nolden (In re Pacific Trencher & Equipment, Inc.)*, 735 F.2d 362, 364 (9th Cir. 1984). Given the express language in the Amended Financing Statement, its terms are "not seriously misleading," since a third party reviewing it could only conclude that it terminated FNB's Financing Statement.

While the Amended Financing Statement rendered FNB's security interest in certain of the Collateral unperfected, the California Commercial Code does not expressly provide that the termination of a financing statement also terminates the underlying security agreement. Moreover, case law inconsistently describes the effect of a UCC termination clause on the underlying lien.[5] Regardless, the full satisfaction of the Mac-Go Loan **and** the filing of the Amended Financing Statement collectively terminated FNB's lien against the Collateral. *See In re Negus-Sons, Inc.*, 460 B.R. 754 (Bankr. 8th Cir. 2011).[6]

B. The Effect of Terminating a Lien During a Pending Bankruptcy Case.

The termination of FNB's lien relegates the Mac-Go Loan Fees to the unsecured claim bin. When a secured creditor relinquishes its security interest during the pendency of a bankruptcy case,

---

[5] Some case law states that a termination clause renders the lien unperfected. Other courts state that a filed UCC termination statement also releases the lien against the underlying collateral. *See, e.g.*, *Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.)*, 960 F.2d 1242, 1245 (4th Cir. 1992)( "[T]he filing of a termination statement constitutes a release of the lien against the debtor's property covered by the financing statement."); *Peoples Bank of Ky., Inc. v. U.S. Bank, N.A. (In re S.J. Cox Enters., Inc.)*, 2009 WL 939573, at *4 (Bankr. E.D. Ky. Mar. 4, 2009)("The termination of a financing statement, even if mistaken, releases the secured creditor's lien against the debtor's property. . . "[A] termination statement's effect on a security interest is dramatic and final."); *In re Silvernail Mirror & Glass, Inc.*, 142 B.R. 987, 989 (Bankr. M.D. Fla. 1992) ("[B]y virtue of the filing of the UCC-3 Termination Statement, [the creditor's] interests in all collateral covered by the UCC-1 Financing Statement was extinguished."); *Roswell Capital Partners LLC v. Alternative Constr. Techs.*, 2010 U.S. Dist. LEXIS 90695, at *23 (S.D.N.Y. Sept. 1, 2010) (termination statement serves to extinguish any perfected security interests secured party held in collateral); *Ward v. Bank of Granite (In re Hickory Printing Group, Inc.)*, 479 B.R. 388, 396 (Bankr. W.D.N.C. 2012) ("The filing of a termination statement releases the secured creditor's lien against the debtor's property.").

[6] The Collateral also included the bank accounts that FNB turned over to the Trustee. While FNB vociferously argues that its lien against these funds survived the turnover, the satisfaction of the Mac-Go Loan also, for the same reason, terminated its lien rights against these funds.

7

its claim becomes unsecured. *See, e.g., In re Gretchen*, 184 B.R. 284, 286 (Bankr. S.D. Ohio 1995) (if a judgment lien lapses during the pendency of a bankruptcy case, the underlying claim is rendered unsecured); *In re Tires N Tracks, Inc.*, 498 B.R. 201, 206-07 (Bankr. N.D. Ill. 2013) (same); *In re Norris*, 2007 WL 3348376, at *4–5 (S.D.Ala. Sept. 12, 2007) (IRS' extinguishment of lien postpetition rendered previously secured claim unsecured); *In re Green*, 310 B.R. 772, 776–78 (Bankr. M.D. Fla. 2004) (same); *c.f. Metaldyne Corp.*, 409 B.R. 671, 679 n. 11 (Bankr.S.D.N.Y.2009), *aff'd*, 421 B.R. 620 (S.D.N.Y.2009) (once lien is released, creditor loses its status as secured creditor). Having only an unsecured claim as to the Mac-Go Loan Fees, FNB must rely on Bankruptcy Code § 502 to assert a claim for not only the Mac-Go Loan Fees, but for the entire amount of its Claim. This analysis requires that this court determine, in part, whether FNB was the prevailing party in the Adversary Proceeding, and if so, whether it timely filed the Claim.

II. There is No Prevailing Party in the Adversary Proceeding

To this court's chagrin, neither party materially addressed who was the prevailing party in the Adversary Proceeding. This is a thorny issue. Federal Rule of Bankruptcy Procedure 7054(b) states in pertinent part that this court may allow costs to the prevailing party in an adversary proceeding. Under recent Supreme Court and Ninth Circuit case law, costs may include attorneys fees which may constitute an allowed proof of claim under Bankruptcy Code § 502. In *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007), the Supreme Court held that when a pre-petition contract authorizes a creditor to recover attorney's fees, these fees may constitute an allowed claim under Bankruptcy Code § 502, even if the fees were incurred in post-petition bankruptcy litigation. The Ninth Circuit in *In re SNTL Corporation*, 571 F.3d 826 (9th Cir. 2009) then determined that an unsecured creditor could include in its proof of claim attorneys fees incurred post-petition that were authorized by a pre-petition contract. Since the contracts at issue - the commercial loan documents between Mac-Go and FNB, including the Guaranty - are subject to California law, this court must look to California law to determine the identity of the prevailing party. *See Travelers Cas. & Sur. Co. of Am.*, *supra*, 549 U.S. at 448.

California law has two potentially applicable prevailing party doctrines. They differ substantially. Civil Code § 1717(a) provides that "[i]n any action on a contract, where the contract

specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Under § 1717(b)(2), the "party prevailing on the contract shall be the party who recovered a greater relief on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section."

California Code of Civil Procedure § 1032(b) entitles a "prevailing party" to "recover costs" as a matter of right "in any action or proceeding." Costs may include attorney's fees when authorized by contract, even when the action is not "on a contract." See California Code of Civil Procedure § 1033.5(a)(10). California Code of Civil Procedure § 1032(a)(4) defines a "prevailing party" to include (a) the party with a net monetary recovery; (b) a defendant in whose favor a dismissal is entered; (c) a defendant where neither plaintiff nor defendant obtains any relief; and (d) a defendant as against those plaintiffs who do not recover any relief against that defendant." Where a party falls squarely within one of these four definitions, a trial court has little discretion in determining the prevailing party, particularly when there is a party with a "net monetary recovery." *See*, *e.g.*, *Goodman v. Lozano*, 47 Cal.4th 1327 (2010). Given the $25,300.24 judgment entered against FNB, the Trustee would be the prevailing party under § 1032(a)(4).

For the reasons stated below, California Civil Code § 1717 is the applicable prevailing party doctrine. First, the Trustee's unsuccessful § 547 claim for relief arising from Mac-Go's payments on the Mac-Go Loan to FNB was an "action on a contract." This court must liberally interpret § 1717, and the fact that the Trustee's claim for relief is based on a Bankruptcy Code avoidance section is irrelevant. See *In re Penrod*, 2015 WL 5730425 (9th Cir.). "California courts liberally construe 'on a contract' to extend to any action as long as an action involves a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit. [¶] [S]ection 1717 broadly applies to any dispute involving a written agreement. . . . Further, the type of relief sought begs the question of whether section 1717 applies. In determining whether an action is "on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis

9

of the cause of action. [citations omitted.] *In re Tobacco Cases I*, 193 Cal.App.4th 1591, 1601-02 (2011). It does not matter whether the fees were incurred offensively or defensively. *Shadoan v. World Savings and Loan Association*, 219 Cal.App.3d 97, 107 (1990).

The Trustee's preference action was an action on a contract, and otherwise satisfied the requirements of Civil Code § 1717(a). A preference action is premised on an "antecedent debt" (i.e. a contractual obligation) and payments being made on that debt (which payments the Trustee sought to avoid). Moreover, several of the statutory affirmative defenses are contractually based (*See*, *e.g.*, § 547(c)(1), (2) and (3)), and FNB successfully relied on the terms of its Mac-Go Loan documents to prevail on this claim for relief. Finally, this court determined in the Mac-Go Fee Clause Order that the Mac-Go Loan's attorney's fee clauses were sufficiently broad to include the fees and costs that FNB incurred in defending against the Trustee's preference claim, since its defense was premised on its "enforcement" of those commercial loan documents.

The Trustee's fraudulent conveyance claims also constituted an action on a contract. Significantly, the Trustee's fraudulent conveyance claims were based on Bankruptcy Code § 548(a)(1)(B), and required the Trustee to prove that Mac-Go did not receive reasonably equivalent value for the payments it made on the Guaranty (i.e a contract). These claims were entirely premised on the existence of contractual payments, and this court denied the requested relief because Mac-Go received a dollar-for dollar benefit for the payments it made under the Guaranty.[7]

---

[7] This court respectfully declines to follow *In re Rothery*, 200 B.R. 644 (Bankr. 9th Cir. 1996), which held that a fraudulent conveyance action under California's Uniform Fraudulent Transfer Act was not an "action on a contract" under § 1717. First, the *Rothery* court appears to have addressed a fraudulent conveyance claim based on "actual fraudulent intent." *Id*. at 651. In that case, the debtor and his wife gave a deed of trust against their residence to the debtors' parents after a substantial judgment was entered against the debtor. The debtor also transferred his interest in the residence to his wife after the judgment. The B.A.P. ultimately held that "[w]hether a party is entitled to attorney's fees under Cal. Civ. Code § 1717 'depends not on the evidence adduced at trial or some interim proceeding, but on the pleadings.' Here, the trustee's pleadings do not evidence an intent to sue on the contract and thereby seek attorney's fees, and, therefore, Cal. Civ. Code § 1717 cannot serve as the basis for the award of fees in this case." [citation omitted.] *Ibid*. As stated above, the Trustee did not allege Mac-Go made the payments with the intent to hinder, delay or defraud its creditors. Instead, the Trustee unsuccessfully argued that Mac-Go did not receive reasonably equivalent value in return. Second, given *In re Penrod*, 2015 WL 5730425 (9th Cir.), this court

In addition, the Guaranty's attorney's fee clause is sufficiently broad to include the fees that FNB incurred in defending against the fraudulent conveyance claims. The Guaranty's attorney's fee clause states:

> Attorneys' Fees; Expenses. Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expense for bankruptcy proceedings, (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post- judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the Court.

*Claim No. 24*, Ex. 1, pp 4-7.

FNB's defense of the fraudulent conveyance claims required that it "enforce" the Guaranty. The Trustee alleged in the Adversary Proceeding that Mac-Go's pre-petition payments on the SSF and Woodland Loans were fraudulent conveyances under § 548(a)(1)(B) because they were payments on account of the Macchias' obligations to FNB, and not direct obligations to FNB. The Trustee therefore contended that these payments did not provide "reasonably equivalent value" to Mac-Go. FNB successfully rebutted this argument by establishing that Mac-Go was equally obligated to make these payments under the Guaranty, and that it thus received reasonably equivalent value for these pre-petition payments. This court's summary judgment order stated that "Mac-Go's SSF and Woodland [pre-petition] loan payments reduced its liability under the Continuing Guaranty on a dollar-for-dollar basis, and this reduction in liability constituted reasonably equivalent value as a matter of law." *Summary Judgment Order*, p.6.

In the Mac-Go Fee Clause Order, this court held that (under California law) FNB's successful

---

believes that a broader interpretation of § 1717 is now required.

11

defense of the Trustee's avoidance claims arising from Mac-Go's payments on the Mac-Go Loan constituted "enforcement" of the Mac-Go Loan.

> FNB successfully argued that the Note and Loan Agreement were valid, enforceable agreements that required Mac-Go to make the twenty-two payments in question. Utilizing the Note and Loan Agreement in order to retain these payments is the functional equivalent of relying on these documents to pursue a collection action. Both should qualify as the "enforcement" of the Loan Agreement and Note. [8]

*Mac-Go Fee Clause Order*, p.7.

The Mac-Go Loan attorney's fee clause(s) are, in all meaningful respects, identical to the Guaranty's fee clause, and this court's reasoning in the Mac-Go Fee Clause Order applies equally herein. Mac-Go was obligated to pay under the Guaranty, and FNB successfully raised and enforced the Guaranty's terms. The Guaranty's fee clause is therefore sufficiently broad to include the fees and costs that FNB incurred in defending against these § 548 claims for relief.

Finally, the Trustee's § 549 claim for relief in this case also appears to be an action on the contract. Section 549(a) generally authorizes a trustee to avoid unauthorized post-petition payments. The thrust of the parties' arguments centered around § 549(b), which provides that "[in] an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, *but not including satisfaction or securing of a debt that arose before the commencement of the case*, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has [emphasis added." The Trustee successfully proved that Mac-Go's post-petition payments on the SSF and Woodland Loans were neither authorized nor compensation for post-petition services rendered to Mac-Go. FNB argued that Mac-Go's post-petition payments were not made under the Guaranty, but instead constituted rent on the SSF and Woodland properties. This court disagreed, finding that there was "ample evidence

---

[8] The Mac-Go Fee Clause Order thoroughly discusses the California law interpreting attorney's fees clauses. That analysis is incorporated herein.

12

demonstrating that the Post-Petition Payments were solely used to satisfy Mac-Go's obligations under the Continuing Guaranty." The court therefore avoided Mac-Go's post-petition payments on the SSF and Woodland Loans. *Trial Order*, p.8. Accordingly, the Trustee prevailed on his § 549 claim because he demonstrated that these post-petition transfers were payments under the Guaranty. As a result, this court entered the $25,300.24 judgment against FNB.

The only remaining question under § 1717 is to determine which party prevailed in the Adversary Proceeding. While the Trustee did obtain a $25,300.24 judgment, FNB prevailed on claims in which the Trustee sought to avoid and recover almost $900,000 in transfers. "Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought. By contrast, when the results of the litigation are not *mixed* - - that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other–the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant. [¶] Accordingly, we hold that in deciding whether there is a "party prevailing on a contract," the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements and similar sources. The prevailing party determination is to be made only upon final resolution of the contract claims and only by a comparison of the extent to which each party has succeeded and failed to succeed in its contentions [citations omitted.]" *Hsu v. Abbara*, 9 Cal.4th 863, 876 (1995).

This court has reviewed all of the applicable pleadings, briefs and arguments submitted by the parties. Considering all this, the court finds that there is no prevailing party. While FNB did prevail on a significant percentage of the Trustee's claims for relief, the judgment entered against FNB is by no means de minimus.[9]

---

[9] The Trustee also contends that FNB's request for fees is procedurally defective. He argues in passing that FNB did not timely file the Supplemental Motions (in which it sought fees and costs) under Federal Rule of Bankruptcy Procedure 7054. The current version of Rule 7054(b) provides that Federal Rule of Civil Procedure 54(d)(2)(A) - (C) and (E) apply in adversary proceedings. Under Rule 54(d)(2)(B), any request for attorney's fees must be made by a motion within 14 days of entry of the judgment. This version of Rule 54 was amended effective December 1, 2014 to include,

13

III. FNB Did Not Timely File the Claim for Fees and Costs

Even if this court finds FNB to be the prevailing party in the Adversary Proceeding, FNB did not timely file a proof of claim for its fees and costs. The last day to file proof of claims in this Chapter 7 was September 27, 2012. FNB did not file the Claim until November 26, 2014. FNB contends, however, that since the fees that it incurred in the Adversary Proceeding were incurred postpetition, it is not bound by the claims bar date.

In support of its position, FNB cites to the "fair contemplation test" under *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009), which provides "that a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under non-bankruptcy law." *Id*. FNB argues that it could not have fairly and reasonably anticipated that the Trustee would file the Adversary Proceeding (which forced it to incur the fees at issue), and that to hold it to the bar date would require "any party who had no pre-petition debt or claim against the estate . . . to file a speculative unfounded claim that it might be sued at some point in a bankruptcy case in every bankruptcy case related to that party." *See Supplemental Memorandum of First National Bank of Northern California in Support of Motion for Allowance and Payment of FNB's Secured Claim*; D.E. #252 at pg. 13. The court disagrees.

First, FNB misstates the facts. FNB had a pre-petition claim against Mac-Go since the Mac-Go, SSF and Woodland Loans were paid off *post-petition*. Secondly, the court is not necessarily moved by FNB's concern that deeming post-petition attorney's fees to be pre-petition claims would force creditors to file "speculative unfounded" claims. Creditors frequently do file contingent, unliquidated claims, and the Bankruptcy Code expressly allows such claims. *See* Bankruptcy Code 502(b)(1). More problematic for FNB is that its position is inconsistent with *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007), and *In re SNTL Corporation, 571 F.3d 826 (9th Cir. 2009)*. Tellingly, the *SNTL* court held that "The parties' execution of a prepetition

---

*inter alia*, subsection (d)(2)(B). This court entered the $25,300.24 judgment on November 12, 2014, and FNB filed the Allowance Motion fourteen days later on November 26, 2014. The prior version of Rule 7054 did not address when a prevailing party must file its motion for attorney's fees. This court is not inclined to hold FNB to a filing deadline that did not exist when the judgment was entered. Accordingly, the court finds that FNB timely sought to recover its fees.

14

Case: 14-44181   Doc# 257   Filed: 11/19/15   Entered: 11/19/15 16:39:18   Page 14 of 18

agreement containing an attorneys' fees provision gives rise to a contingent, unliquidated attorney-fee claim . . . '[w]hen a creditor's right to payment for fees exists prepetition, the right to payment constitutes a 'claim,' within the meaning of § 101(5)(A), albeit an unliquidated, unmatured claim that may be estimated for purposes of allowance.'" *In re SNTL Corp*. at 843 (citations omitted). "'So long as the right to collect the fees existed pre-petition, the fact that the fees were actually incurred during the postpetition period is not relevant to the determination of whether the creditor has an allowable pre-petition claim for the fees.'" *Id*. (citations omitted). FNB ably argued this very point in the Allowance Motion, citing to *SNTL* and echoing *SNTL*'s holding:

> Most recently, the Ninth Circuit Court of Appeals has again held that where a creditor incurred attorneys' fees and costs in post-petition litigation, it will be allowed to assert an unsecured pre-petition claim for those fees and costs . . . .As it applies to this case, the Ninth Circuit Court of Appeals held that an unsecured creditor may include attorneys' fees incurred post-petition as part of its unsecured claim.

*Allowance Motion*, p.7-8. FNB's right to fees and costs flows solely from its pre-petition commercial loan documents. As a result, to the extent that the Claim includes the fees that FNB incurred in the Adversary Proceeding, the Claim was not timely filed.

This court understands that in certain respects, this holding may appear to be inherently unfair. Mac-Go satisfied all its obligations to FNB post-petition, but before the order for relief was entered. FNB therefore had no immediate need to file a proof of claim in this case. A clever chapter 7 trustee could, hypothetically, file an avoidance action against such a transferee after the bar date to insulate the bankruptcy estate against the attorneys fees that could be awarded to a victorious, albeit unsecured, creditor/defendant. This, however, is not what happened in this case. FNB was owed money under the Mac-Go Loan and Guaranty on the petition date. This in and of itself satisfies the fair contemplation test, and should have prodded it to file a proof of claim.

The court also notes that FNB received ample notice of the Trustee's intent to commence the Adversary Proceeding well before the claims bar date. The Trustee informed FNB in an email dated May 29, 2012 (three months before the claims bar date) that he intended to file the Adversary Proceeding, and provided FNB with a preliminary detail of the transfers he sought to avoid. The

15

Trustee then filed the Adversary Proceeding on July 10, 2012, more than two months before the claims bar date, and FNB filed its first motion to dismiss on August 10, 2012, forty-eight days before the claims bar date. By this time, FNB had begun to accrue significant attorney's fees litigating the Adversary Proceeding, yet it, inexplicably, did not file a claim. FNB has never explained why this litigation did not prompt it to review its loan documents and file a proof of claim. Of course, the filing of a late claim does not automatically render such claim disallowed. Section 502(b) of the Bankruptcy Code enumerates the bases for disallowance, none of which include the timeliness of a claim. Indeed, Section 726(a)(3) of the Bankruptcy Code contemplates payment of an "allowed unsecured claim proof of which is tardily filed." Thus, even if FNB was the prevailing party, its fee claims would be subordinated to timely-filed unsecured claims, and would only receive a dividend when timely-filed unsecured claims are paid in full. The court understands that it is unlikely that tardily filed claims will receive a dividend in this case.[10]

For the reasons stated above, this court sustains the Trustee's objection to that portion of the Claim that includes FNB's attorney's fees and costs.

IV.     The Rule 3002(c)(3) Claim.

The $25,300.24 judgment entered in the Trustee's favor created a partial, supplemental claims bar date for FNB. Bankruptcy Code § 502(h) provides that "A claim arising from the recovery of property under section ... 550 ... of this title shall be determined, and shall be allowed under subsection (a), (b) or (c) of this section . . . the same as if such claim had arisen before the date of the filing of the petition." Federal Rule of Bankruptcy Procedure 3002(c)(3) further provides that an unsecured claim arises "in favor of an entity or becomes allowable as a result of a judgment . . . if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property." FNB therefore was authorized to file a claim for the $25,300.24 judgment. A Rule 3002(c)(3) claim must be filed within 30 days after the judgment that gave rise to the claim becomes final. The judgment was entered on November 12, 2014 and FNB filed the Claim on

---

[10] The Claims Register in this case indicates that the general, unsecured claims total more than $1.3 million. The Trustee's counsel has filed its final fee application. Its work indicates that the bankruptcy case holds far less than $1.3 million.

16

Case: 14-44181    Doc# 257    Filed: 11/19/15    Entered: 11/19/15 16:39:18    Page 16 of 18

November 26, 2014. Accordingly, the court finds that the $25,300.24 portion of FNB's claim for relief is a timely filed, allowed, general unsecured proof of claim.

V.     FNB's Attorney's Fees Incurred in Michael Macchia's Individual Bankruptcy Case.

FNB argues that the Guaranty entitled it to recover the attorney's fees that it incurred in Michael Macchia's individual bankruptcy. FNB contends that it was required in his case to enforce its right to payment under the SSF and Woodland Loans. Macchia, however, was not the guarantor under the Guaranty. By definition then, FNB was not enforcing the Guaranty's terms in the Macchia bankruptcy. Accordingly, the Trustee's objection to the $26,707.00 in fees and $927.08 in costs incurred by FNB in Macchia's individual case is sustained, and these fees are disallowed.

## Conclusion

For the foregoing reasons, the court 1) grants FNB an allowed, unsecured claim in the amount of $25,300.24, 2) sustains the Trustee's objection as to the $26,707.00 in fees and $927.08 in costs incurred in the Michael Macchia bankruptcy; and 3) sustains the Trustee's objection to FNB's remaining $293,811 in fees and costs.

**END OF ORDER**

Case No. 14-44181 CN

**COURT SERVICE LIST**

Mac-Go Corporation
273 E. Harris Ave
South San Francisco, CA 94024

Other recipients are ECF participants